# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

SECURENOVA, LLC,                    §
                                    §
        Plaintiff,                  §
                                    §
    v.                              §        Case No. 2:13-CV-904-WCB-RSP
                                    §            LEAD CASE
                                    §
HTC CORPORATION, ET AL.,            §
                                    §
        Defendants.                 §


## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

On November 19, 2014, the Court held a hearing to determine the proper construction of the disputed claim terms in United States Patent No. 7,792,482 ("the '482 patent"), owned by plaintiff SecureNova, LLC. After considering the arguments made by the parties at the hearing and in the parties' claim construction briefing (Dkt. Nos. 78, 84, 89, and 99), the Court issues this Claim Construction Memorandum Opinion and Order.

## I. BACKGROUND

The '482 patent, entitled "Communication Service Subscription Management," describes a system in which multiple receivers may be enabled to receive satellite-based digital radio signals under a single subscription. As the patent explains, a subscriber with a single satellite radio subscription may wish to receive service not only through a primary receiver at his home but also, for example, through secondary receivers in each of several vehicles. The patented system allows a subscriber to receive satellite radio signals not only on a primary receiver, but

1

also on multiple secondary receivers, which can travel outside the vicinity of the primary receiver while still receiving signals.

As the patent notes, authorizing secondary devices to receive satellite radio signals on a single subscription creates a risk of abuse if, for example, an unauthorized user should purchase a vehicle in which a secondary receiver is located. In order to ensure that unauthorized users do not take advantage of the subscriber's service by obtaining possession of secondary receivers that were originally among the subscriber's receivers, the patented method provides that a secondary receiver that is outside the vicinity of the primary receiver for more than a designated period of time will lose its authorization to receive the satellite radio communications. The patented method requires that, in order to continue to receive signals from the satellite radio system, each secondary receiver must periodically return to the vicinity of the primary receiver, at which point it will be reauthorized to receive the radio communications.

The asserted independent claims of the '482 patent, claims 1 and 14, recite as follows:

1. A method to enable a secondary communication device to receive communications services, the method comprising:

configuring a primary communication device to receive communication services from a service provider and communicate with the secondary communication device;

configuring the secondary communication device to receive communication services from the service provider when an authorized operational mode is set, prevent receiving communication services when an unauthorized operational mode is set, and communicate with the primary communication device;

determining whether the secondary communication device is within a threshold proximity to the primary communication device;

setting the authorized operational mode for a threshold duration when the secondary communication device is within the threshold proximity to the primary communication device; and

setting the unauthorized operational mode when the secondary communication device is outside the threshold proximity to the primary communication device for greater than the threshold duration.

2

14.     A processor-readable medium having processor-executable instructions for:

configuring a communication device to a secondary communication device status, wherein the secondary communication device status allows receiving communication services from a service provider when an authorized operational mode is set and prevents receiving communication services when an unauthorized operational  mode is set;

determining whether the secondary communication device is within a threshold proximity to the primary communication device;

setting the authorized operational mode for a threshold duration when the secondary communication device is within the threshold proximity to the primary communication device; and

setting the unauthorized operational mode when the secondary communication device is outside the threshold proximity to the primary communication device for greater than the threshold duration.

The parties disagree over the proper construction of a number of the terms used in the asserted claims.  In order to provide some context for the claim construction disputes, it is useful to refer briefly to the accused products.  LG, the only remaining defendant in this case, includes a feature known as the "Portable Wi-Fi Hotspot" on its mobile phones.  When that feature is enabled and turned on, the phone transmits a Wi-Fi signal that provides Internet access to other devices, such as laptop or tablet computers, that are within the Wi-Fi communication range of the phone.  To save battery life, the phone automatically turns off the hotspot feature after a set period of no Internet activity by any of the devices using the Wi-Fi connection.

Although LG's product does not relate to satellite radio reception, SecureNova argues that the asserted claims of the '482 patent are broad enough to capture LG's "Portable Wi-Fi Hotspot" technology.   According to SecureNova, LG's phone serves as the primary communication device, and the laptop or tablet computer that is within Wi-Fi range of the phone serves as the secondary communication device.  The claim construction disputes relate mainly to

the parties' differing views as to whether the claims 1 and 14 of the '482 patent are broad enough to cover LG's products.

## II. THE COURT'S CONSTRUCTIONS

In its claim construction brief, LG has divided the claim construction issues according to five issues to which they pertain. The Court believes that it will be useful to begin by providing the Court's answers to the five questions that LG identifies as capturing the principal disputes between the parties pertaining to claim construction. The following are the five questions that LG identifies as bearing on the claim construction disputes (minus the argumentative portions of LG's statement of the issues). The Court's conclusions as to the resolution of each of those questions follows the statement of the questions.

1. Should independent claims 1 and 14 be construed to require that the secondary communication device still be able to receive communication services for a threshold duration after the secondary communication device goes outside the threshold proximity of the primary communication device?

The answer to that question is plainly "yes." The whole point of the '482 patent is to allow a secondary communication device to continue to receive communication services for some period of time after it has left the threshold proximity of the primary communication device. Claims 1 and 14 make that point entirely clear, as they both provide that the secondary communication device remains authorized to receive communication services until the device has been "outside the threshold proximity to the primary communication device for greater than the threshold duration." The specification is even more explicit on this point. After a vehicle with a secondary communication device has left the threshold proximity of the primary

4

communication device, the specification provides that "[t]he receiver located in the vehicle may remain authorized, provided that the vehicle returns to the threshold proximity to the house often enough to satisfy the proximity criteria." '482 patent, col. 5, ll. 44-47. <u>See also</u> <u>id.</u> at col. 5, ll. 50-57 ("Accordingly, if the vehicle is used to commute to work every day, the receiver located in the vehicle will remain authorized as long as the vehicle parks at the house sufficiently often. If, however, the vehicle is sold and permanently removed from the threshold proximity to the house, the receiver located in the vehicle will eventually become unauthorized.").

2. Should independent claims 1 and 14 be construed to require setting an unauthorized operational mode in the secondary communication device—not the primary communication device—when the secondary communication device is outside the threshold proximity to the primary communication device for greater than a threshold duration?

Again, the answer is plainly "yes." The patent explains that when the secondary communication device is outside the threshold proximity to the primary communication device, the secondary device is outside the range for communicating with the primary device. As such, the primary and secondary communication devices have no means of communicating with one another, so the unauthorized operational mode must be set in the secondary communication device, not in the primary communication device.

SecureNova responds to LG's argument on this issue by pointing to a passage in the specification that states that the invention can be practiced in "distributed processing environments in which tasks are performed by remote processing devices that are linked through a communication network or other data transmission medium." '482 patent, col. 4, ll. 25-29. That passage, however, does not alter the Court's conclusion that the unauthorized operational

mode must be set in the secondary communication device when it is outside the threshold proximity to the primary communication device. While the task of setting an unauthorized operational mode can be performed by any processing device that is in communication with the secondary communication device, it cannot be performed by (or in) the primary communication device when the secondary communication device is outside the threshold proximity for the simple reason that the two devices cannot communicate with one another in that situation.

3. Do the terms in independent claims 1 and 14, when properly construed, require that the primary and secondary communication devices both receive signals broadcast from a communication service provider?

The answer is "yes." The patent makes clear that it applies only to communications that are broadcast and are receivable by multiple receivers, including what the patent refers to as primary receivers and secondary receivers. Although SecureNova asserts that the communications at issue in the patent need not be limited to communications that are broadcast, and can include Internet communications, it offers nothing of substance to support that argument. SecureNova's reference to column 7 of the specification is not persuasive on this point. The discussion in that portion of the specification does not address the scope of the term "communication services," but instead deals with the types of processor-readable media that can be used to embody the instructions to perform the steps set forth in claim 14. See '482 patent, col. 7, ll. 12-42. Although SecureNova argues that broadcast signals are used in only one embodiment of the invention, there is no embodiment disclosed in the specification using any other form of communication, and it is entirely unclear how the patented invention would work with any other communication means. In the abstract, in the summary of the invention, and in

the description of the preferred embodiments, the patent repeatedly and consistently refers to broadcast signals and the ability to configure secondary receivers either to allow or prevent their reception of such signals, depending on whether the secondary receivers are within the threshold proximity of the primary receiver or have been away from the proximity of the primary receiver for more than a designated period of time.

Moreover, as LG argues, there is no support in the patent for SecureNova's argument that a secondary receiver receives communication services via the primary receiver. The patent and the prosecution history make clear that the communication services from the communication service provider are sent to the primary and secondary receivers, either directly or after being rebroadcast by a terrestrial repeater. See '482 patent, col. 1, ll. 27-29 ("These satellites broadcast the programming directly to digital radios that subscribe to the service."); Defendants' Responsive Claim Construction Brief, Exhibit 4, Dkt. No. 84-4, at 11 (Unlike a prior art system, the applicants "show two communication devices that are set to an authorized operation mode to receive a signal from a communication service such as a satellite radio service provider and communicate with each other. . . . The secondary communication device is authorized to receive the signal from the communication service for a threshold period of time after the authorized operational mode is set."). When the secondary receiver is out of range for communicating with the primary receiver, there would be no way for the primary receiver to relay the communication services to the secondary receiver. Yet as long as the secondary receiver has not been outside the threshold proximity of the primary receiver for more than the designated threshold duration, the secondary receiver continues to receive communication services.

4.  Do the "configuring" steps in claims 1 and 14 that were added during prosecution refer to the set-up process of assigning a primary or secondary communication device status to each communication device, or do those steps refer to setting the authorized and unauthorized operational modes?

The answer is that the "configuring" steps are those steps during the setup process when the service provider assigns primary or secondary communication device status to each communication device.  The claims themselves make this clear.  See also '482 patent, col. 2, ll. 1-6; col. 4, ll. 45-51.  The "configuring" steps perform a different function from the "setting" steps, which follow them in the claims.  The "setting" steps are those in which the operational mode of the secondary receiver is determined based on whether the secondary receiver is within the threshold proximity of the primary receiver or has been outside the threshold proximity of the primary receiver for more than a designated period of time (the "threshold duration").  The first "setting" step sets the authorized operational mode in the secondary receiver when the secondary receiver is within the threshold proximity to the primary receiver.  The second "setting" step sets the unauthorized mode in the secondary receiver when the secondary receiver has been outside the threshold proximity of the primary device for more than the threshold duration.

5.  Does the claim term "proximity" mean "distance," or does it also refer to closeness in time?

The answer is that the term "proximity," as used in the '482 patent, is a measure of "distance" or, more precisely, "range."  While in some contexts "proximity" can mean temporal closeness, the term is not used in that manner in the '482 patent; both the specification and the prosecution history make clear that "proximity" and "threshold proximity" refer to measures of

distance.  More precisely, in the context of the '482 patent, the term "proximity" refers to the range for communications between the primary and secondary communication devices.

* * *

A theme that runs throughout SecureNova's claim construction briefs is that LG's proposed claim constructions are unduly restrictive and improperly read limitations from the specification of the '482 patent into the claims, in violation of the Federal Circuit's decisions in Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005), and numerous other like cases.  While it is true that the Federal Circuit in Phillips cautioned against reading limitations from preferred embodiments into the claims, it also noted that "the specification 'is always highly relevant to the claim construction analysis.  Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'"  Phillips, 415 F.3d at 1315, quoting from Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  The Federal Circuit has reiterated that point many times both before and after Phillips.  See, e.g., Ericcson, Inc. v. D-Link Sys., Inc., Nos. 2013-1625 et al., slip op. 10 (Fed. Cir. Dec. 4, 2014); Marine Polymer Techs., Inc. v. HemCon, Inc., 672 F.3d 1360, 1367 (Fed. Cir. 2012); MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 912 (Fed. Cir. 2012).  In this case, the specification provides significant guidance in the proper construction of the claims and rebuts SecureNova's contention that the claims must be read as broadly as SecureNova contends.

For its part, LG argues at various points in its brief that the asserted claims of the '482 patent are invalid for indefiniteness.  This Court rejects that argument.  As indicated below, the Court has concluded that the claims at issue in this case, viewed in light of the specification and the prosecution history, inform those skilled in the art about the scope of the invention with

reasonable certainty. See Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2129 (2014). As such, the asserted claims are not invalid for indefiniteness.

With those comments as to the general questions presented by the parties regarding the claim construction issues in this case, the Court now turns to the particular terms that the parties have identified as remaining in dispute between them.

### 1. "authorized operational mode"

Plaintiff's proposed construction: Plaintiff initially proposed the following construction—"The mode in which the secondary communication device is enabled to receive communication services if it is within the threshold proximity." At the claim construction hearing, the plaintiff offered the following revised proposed construction: "A mode that allows a secondary communication device to receive communication services."

Defendant's proposed construction: "A mode that allows a communication device to receive a signal broadcast by a communication service provider such as a satellite radio service provider and to produce an audio and/or visual output to the user(s) of the secondary device."

Analysis: The plaintiff's original proposed construction is objectionable because it refers to the secondary communication device receiving services "if it is within the threshold proximity." The patent makes clear that the secondary communication device can be in authorized operational mode, and thus capable of receiving communication services, even when it is not within the threshold proximity to the primary communication device, as long as it is still within the threshold duration period, i.e., as long as it has not exceeded a predetermined period of time within which it will be able to receive signals without returning to the proximity of the primary communication device.

The Court finds LG's proposed construction to be accurate, but cumbersome. At the claim construction hearing, LG's counsel explained that the purpose underlying LG's proposed construction was to ensure that it was clear that in "authorized operational mode" the secondary communication device would not only be "authorized" to receive communication services in some abstract sense, but would actually be capable of doing so. The Court has concluded that LG's concern can be met by construing the term to mean a mode that allows the secondary communication device to receive communication services, with the understanding that the secondary communication device in the authorized operational mode must be capable of doing so.

LG proposes that instead of the term "communication services," which is the term used in the claims, the Court's construction should use the phrase "a signal broadcast by a communication service provider such as a satellite radio service provider and to produce an audio and/or visual output to the user(s) of the secondary device." Although the Court agrees with LG that the communication services referred to in the '482 patent are limited to broadcast services, the Court believes the Court's construction will be clearer if the Court defines the terms "authorized operational mode" and "unauthorized operational mode" in terms of "communication services," without incorporating the definition of "communication services" into the definition of other terms.

SecureNova's revised proposed construction cures the problems with its original proposed construction. When SecureNova offered its revised proposed construction at the claim construction hearing, LG voiced no objection to the revised language, as long as the term "allows a secondary communication device to receive communication services" is understood to mean

"is capable of receiving communication services."  SecureNova did not take issue with LG's understanding of the meaning of the term "allows."  The Court agrees with LG's understanding of the meaning of the term "allows" in this context, and with that understanding, the Court will adopt the plaintiff's revised proposed construction.

The Court's construction of "authorized operational mode" is:  **A mode that allows a secondary communication device to receive communication services.**

## 2.  "unauthorized operational mode"

Plaintiff's proposed construction:  Plaintiff initially proposed the following construction—"The mode in which the secondary communication device is prevented from receiving communication services."  At the claim construction hearing, the plaintiff offered the following revised proposed construction:  "A mode that prevents a secondary communication device from receiving communication services."

Defendant's proposed construction:  "A mode that prevents a secondary communication device from receiving a signal broadcast by a communications service provider."

Analysis:  The analysis set forth above in connection with the term "authorized operational mode" applies equally to the construction of "unauthorized operational mode."  The Court adopts the plaintiff's revised proposed construction of the term.

The Court's construction of "unauthorized operational mode" is:  **A mode that prevents a secondary communication device from receiving communication services.**

### 3. "primary communication device"

Plaintiff's proposed construction: "Device that is authorized to receive the communication services from the service provider and that can authorize other communication devices to receive communication services from the service provider."

Defendant's proposed construction: "Communication device that is designated as being the primary communication device."

At the claim construction hearing, the parties agreed that no construction of the term "primary communication device" was necessary.

Analysis: LG's proposed construction adds nothing by way of enlightenment as to the meaning of the term. SecureNova's construction is generally unobjectionable, except that the reference to the primary communication device as being able to authorize other communication devices to receive communication services from the service provider may be confusing in light of reference in the patent to the service provider having to authorize secondary communication devices to receive communication services. In light of the rest of the patent, the term is clear enough, standing alone.

The Court's construction of "primary communication device" is: **No construction necessary.**

### 4. "secondary communication device"

Plaintiff's proposed construction: "Device that receives communications from the service provider via the primary communication device."

Defendant's proposed construction: "Communication device that is designated as being the secondary communication device."

At the claim construction hearing, the parties agreed that no construction of the term 'secondary communication device" was necessary.

Analysis:  As explained above, there is no support for SecureNova's contention that the secondary communication device of the '482 patent receives communications via the primary communication device.  To the contrary, when the secondary communication device is outside the range for communicating with the primary communication device, the secondary device can still receive communications from the communication service provider, so SecureNova's argument cannot be right.  On the other hand, LG's proposed construction adds nothing to the plain language of the term.  In light of the rest of the patent, the term is clear enough, standing alone.

The Court's construction of "secondary communication device" is:  **No construction necessary.**[1]

### 5. **"proximity"** and **"threshold proximity"**

Plaintiff's proposed constructions:  "Proximity"—no construction necessary.  "Threshold proximity"—"range in which the secondary communication device can successfully establish wireless communication with the primary communication device."

Defendant's proposed constructions:   "Proximity" should be construed to mean "distance"; "threshold proximity" should be construed to mean "Threshold distance."

---

[1]     Although the parties initially proposed differing constructions of the term "communication device," they did not dispute the meaning of the term in the joint claim construction chart filed shortly before the claim construction hearing, Dkt. No. 90-1.  At the hearing, LG agreed with SecureNova's position that the term required no construction.  The Court will adopt the parties position that the term requires no construction.

Analysis:  The term "threshold proximity" is consistently used in the specification and the claims as a measure of distance—more precisely, a measure of the range for communications between the secondary communication device (referred to in the patent as the secondary receiver) and the primary communication device (referred to in the patent as the primary receiver).  Repeatedly, the specification refers to a secondary receiver as being enabled to receive communication services if it is within a designated "threshold proximity" to its corresponding primary receiver, or if it has not been outside that threshold proximity for more than a designated period, or "threshold duration."  <u>See</u> '482 patent, col. 2, ll. 13-22, 31-39, 52-59, 61-67; col. 3, ll. 54-61; col. 4, ll. 52-59; col. 5, ll. 10-32, ll. 39-67; col. 7, ll. 53-59; col. 8, ll. 8-13, 60-67; col. 9, ll. 7-11, 46-53.  Twice the specification refers to the term "proximity" in terms of the range of the primary receiver.  <u>See id.</u>, col. 7, ll. 53-59; col. 9, ll. 46-50.  Moreover, Figure 1 of the patent depicts one secondary receiver in a vehicle close to a house where the primary receiver is located, and within a dashed circle around the house.  The figure depicts another vehicle farther away from the house, outside the dashed circle.  The figure is described in the specification as showing the first vehicle within the threshold proximity of the house and the other vehicle having "left the threshold proximity to the house."  <u>Id.</u>, col.  5, ll. 39-47.  It is clear that the area within the circle is the area of threshold proximity to the primary receiver in the house.  Finally, in the prosecution history the patentee referred to the "threshold proximity" limitations in terms of whether the secondary receiver is "outside of a threshold distance" from the primary receiver, a clear indication that the claims use the term "proximity" to refer to the distance between the primary and secondary receivers.  *See* Defendants' Responsive Claim Construction Brief, Dkt. No. 84-4, Exhibit 4, at 14, 16-17 (distinguishing prior art inventions that, unlike the applicant's

invention, do not "continue to receive signals if the receiver is taken away from the venue," and "do not teach or suggest keeping the receiver in an authorized operation mode for a period of time if the receiver is outside of a threshold distance"); id., Dkt. No. 84-5, Exhibit 5, at 13 (same).

Plainly, the patent uses the term "proximity" as a measure of distance and in particular as corresponding to the range of the transmitters that maintain communication between the primary and secondary receivers. SecureNova objects to the use of the term "distance" on the ground that the range of the transmitter in the primary device may vary in accordance with terrain and other factors, making "distance" an imprecise measure of proximity for purposes of the claim language. The Court acknowledges that although proximity, as used in the patent, is a function of distance, other variables may affect the distance that constitutes "proximity" in particular cases. The Court will therefore use the term "range" in place of distance in order to avoid the problem pointed out by SecureNova. The Court concludes that the term refers to the range within which the primary and secondary receivers can communicate with one another wirelessly.

The Court's construction of "threshold proximity" is: **"the range within which the secondary communication device can successfully establish wireless communication with the primary communication device."** No separate construction is necessary for the term "proximity."

**6. "setting the authorized operational mode for a threshold duration"** and **"setting the unauthorized operational mode when the secondary communication device is outside the threshold proximity to the primary communication device for greater than the threshold duration"**

16

Plaintiff's proposed constructions:  No construction necessary for either limitation.

Defendant's proposed construction for setting the authorized operation mode:  "Setting an authorized operational mode of the secondary communication device that lasts for a threshold duration even when the secondary communication device is outside of the threshold distance to the primary communication device."

Defendant's proposed construction for setting the unauthorized operational mode:  "Setting an unauthorized operational mode of the secondary communication device when the secondary communication device is outside of the threshold distance to the primary communication device for greater than the threshold duration.  When the secondary communication device is outside of the threshold distance for less than the threshold duration, the device remains in an authorized operational mode."

Analysis:  The meaning of the two "setting" limitations is reasonably clear, but the Court believes that explaining those limitations in simpler language would be useful for a jury and would clarify the scope of the inventions recited in claims 1 and 14.[2]

In order to make the two "setting" limitations more readily understandable to a jury, the Court will adopt the thrust of LG's construction, but will do so as part of a narrative explanation of the two limitations.  The Court believes that in this instance the construction of the claim language will be clearer if it is done in narrative form rather than by attempting to define each of

---

[2]  The parties initially proposed different constructions of the term "threshold duration." In the joint claim construction chart submitted shortly before the claim construction hearing, Dkt. No. 90-1, they indicated that they had agreed on the construction initially proposed by the plaintiff.  The parties confirmed that agreement during the claim construction hearing.  They now agree that the term "threshold duration" means "the time during which the authorized operational mode will remain set if the secondary communication device is outside of a threshold proximity."  The Court accepts that definition of the term "threshold duration."

the pertinent claim terms seriatim. Moreover, in order to make the claim construction more readily understandable to a jury, the Court will construe the two "setting" limitations in each of the asserted claims together. In so doing, the Court will construe the "setting" limitations in a manner that reflects that the secondary receiver is set in authorized operational mode when it is within the "threshold proximity" to the primary receiver, and that it is set to unauthorized operational mode after it has been outside the "threshold proximity" to the primary receiver for a period greater than the "threshold duration."

The Court's construction of the two "setting" limitations in claims 1 and 19 of the '482 patent is: **"Whenever the secondary communication device is within a designated range of the primary communication device, it will be set to authorized operational mode, which means that it will be able to receive certain communication services, such as satellite radio broadcasts. When the secondary communication device goes outside the designated range of the primary communication device, it will continue to be in authorized mode, and will continue to be able to receive those communication services, but only for a designated period of time. If the secondary communication device remains outside the designated range for more than the designated period of time, the secondary communication device will be set to unauthorized operating mode, which means that it will be incapable of receiving those communication services."**

At the claim construction hearing, and in supplemental briefing invited by the Court, LG argued that the "setting" of the operational modes had to be performed "by the communication device in which the mode is being set." The Court declines to add LG's proposed language to the claim construction. In neither claim 1 nor in claim 14 do the "setting" limitations specify

which of the devices does the "setting," and the specification does not dictate a more restrictive construction. It is true that the secondary receiver must convert to unauthorized operational mode without input from the primary receiver when the secondary receiver has been outside the range for communication with the primary receiver for more than a designated period of time, since the primary receiver cannot communicate with the secondary receiver at that point. However, the act of "setting" the unauthorized operational mode can be viewed as having been triggered by the service provider, which set the designated period after which the secondary receiver would be switched to unauthorized operational mode. Accordingly, LG's proposed construction would be unduly restrictive and potentially confusing to a jury.

### 7. "communication services"

Plaintiff's proposed construction: "Data provided over a communications link to and from a communication device and a service provider, such as satellite based digital audio radio or the Internet."

Defendant's proposed construction: "A signal containing audio and/or video information that is broadcast by a communication service provider such as a satellite radio service provider."

Analysis: As noted above, the specification does not support inclusion of the Internet as a possible type of communication service, as that term is used in the '482 patent. Nor does SecureNova explain how the limitations of the claim would work with a non-broadcast communication means such as the Internet. LG's proposed construction is generally in accordance with the Court's understanding of the term "communication services" as used in the patent, and the Court will therefore adopt it with modifications. One modification that the Court will adopt is to omit the reference to "audio and/or video information" as a limitation on the

definition of "communication services." While the patent generally relates to the communication of audio information and could readily be adapted to the communication of video information, it is not limited by its terms to those two forms of communication, but would apply to broadcast signals of any type.

The Court's construction of "communication services" is: **"Services consisting of signals that are broadcast by a communication service provider such as a satellite radio service provider."**

**8. "configuring a primary communication device to receive communication services from a service provider and communicate with the secondary communication device"**

Plaintiff's proposed construction: No construction necessary.

Defendant's proposed construction: "Executing program instructions in a device that assigns the device a primary communication device status, which enables the device to receive a signal broadcast by a communication services provider and to communicate with a secondary communication device identified by the communication service provider."

Analysis: The "configuring" limitations are clear on their face once the component terms such as "primary communication device," "secondary communication device," and "communication services" are explained. While it would not seem that the "configuring" limitations require further construction, there has been some disagreement among the parties as to the meaning of those limitations. Accordingly, the Court will provide a construction consistent with the plain meaning of those limitations.

The Court's construction of "configuring a primary communication device to receive communication services from a service provider and communicate with the secondary

communication device" is: **"programming a communication device so that it will perform the functions of a primary communication device in receiving signals broadcast by the communication services provider and communicating with secondary communication devices."**

**9. "configuring the secondary communication device to receive communication services from the service provider when an authorized operational mode is set"** and **"configuring a communication device to a secondary communication device status"**

Plaintiff's proposed construction: "setting the secondary communication device to an authorized state so that it can receive communication services from the service provider via the primary communication device." Alternatively, the plaintiff proposes that these limitations need no construction.

Defendant's proposed construction: "Executing program instructions in a device that assigns the device a secondary communication device status, which allows the device to receive a signal broadcast by a communication service provider only when an authorized operational mode is set in the device."

Analysis: Again, these limitations are clear on their face, particularly once the terms "communication services" and "authorized operational mode" are explained. However, to resolve any dispute between the parties over the meaning of the limitations, the Court will construe them consistent with their plain meaning.

The Court's construction of "configuring the secondary communication device to receive communication services from the service provider when an authorized operational mode is set" and "configuring a communication device to a secondary communication device status" is:

**"programming a different communication device so that it will perform the functions of a secondary communication device in receiving signals broadcast by the communication services provider and communicating with the primary communication device."**

10. **"configuring the secondary communication device to . . . prevent receiving communication services when an unauthorized operational mode is set"**

Plaintiff's proposed construction: "Preventing the secondary communication device from receiving communication services from the service provider via the primary communication device when an unauthorized operational mode is set." At the claim construction hearing, the plaintiff suggested, alternatively, that the term needed no construction.

Defendant's proposed construction: "Executing program instructions in a device that assigns the device a secondary communication device status, which prevents the secondary communication device from receiving communication services when an unauthorized operational mode is set."

Analysis: Once again, the language of the limitation is clear, particularly once the term "unauthorized operational mode" is explained. However, the Court will construe the limitation consistent with its plain meaning in the context of the patent.

The Court's construction of "configuring the secondary communication device to . . . prevent receiving communication services when an unauthorized operational mode is set" is: **"programming the secondary communication device or devices so that the secondary device will not be allowed to receive communication services when it is set in the unauthorized operational mode."**

### III.  OPPORTUNITY FOR OBJECTION

Because of the importance of claim construction to the resolution of a patent case, and because several of the Court's constructions in this case differ from those proposed by the parties, the Court will allow the parties 20 days from the date of this order within which to file objections to any of the Court's claim constructions that the parties believe to be erroneous.  Any objections should be specific and point out why the Court's claim construction is erroneous in light of particular portions of the patent or other intrinsic or extrinsic evidence in this case. Absent specific objection to particular claim construction rulings, the Court will regard the party as having waived its objections to any ruling not objected to.

IT IS SO ORDERED.

SIGNED this 15th day of December, 2014.


WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE